I'm counsel for Calvin Fischer and Penny Fischer. This matter has been, obviously, extensively briefed. I think from the appellant's perspective, the Fischer's perspective, it's a very straightforward case. There's a long line of Ninth Circuit authorities that say that when abuse of discretion review is at issue, the district court is limited to the material that's in the administrative record and cannot stray from that record. I don't think there's any question in this case that when the district court used evidence from outside the record as the basis for remand, that's reversible error. The real issue presented is having... I don't understand how the district court used anything outside the record to create the remand. What it did, it seemed to me, was to say, look, Aetna plainly abused its discretion by relying upon the wrong policy. Having done that, I'm going to remand so that the record can be developed. And the district court said, I acknowledge Aetna's argument about intoxication, but that isn't the same as considering it or relying on it. Well, it is, Your Honor, because if you take that evidence and set it aside, as we must, under that, and I won't mention all the cases, but there's at least a half dozen. Once that evidence is set aside, what is the court really doing if that is the complete administrative record, meaning there's no intoxication evidence in that record? If the court is just looking at the record, what is the remand based on? Because the argument made by... A complete abuse of discretion because of the incorrect interpretation of what the right plan was. And that brings us to Snow v. Standard, which says once the court finds the abuse of discretion, the appropriate way to proceed at that point is to then look at the record and see if the benefits are due. What the court did here, the district court, is it stopped and said, is there something else that can be done here? Now, and again, assuming we set aside the evidence that was improperly submitted at the district court, if the court's going to remand a case based on the assumption that there's something left to do, that's going to encompass every case that comes along. There's always something that you can assume remains to be done outside the record. And so you would say where you find an abuse of discretion, if the either side really, because you can't restrict this to the insurance companies and say only the insurance companies get to raise these new issues, if either side can raise a hypothetical situation that might lead to a different result, then you must remand. What the district court did here, though, is really it looked at that line of authority that the Aetna had submitted and said, that's why I'm remanding, because we have this situation where we've got a misapplied plan. Now, here's why the court shouldn't fall for that, because those cases are distinguishable very simply because, number one, in this case, Aetna's conceded the eligibility issue. That was the only issue that the court was asked to review. Once Aetna conceded the eligibility issue, it took it out of Shadler, it took it out of Saffle, it took it out of Escano, because there what you have is a factual dispute. You had a – in each of those cases, I'm sure the Court's familiar with all of them, but in each of those cases, you had an issue that was a factual dispute on the record. In Saffle, it was total disability, and there was some evidence going both ways. It was a plan interpretation question. In Shadler, it was a question of whether it was a self-inflicted injury. And in Escano, it was a question of what on U.S. payroll meant. So in all three of those cases, the reason the Court couldn't step in and make that call is because there's a factual dispute. In other words, the evidence is already in the record. And that's a very logical way to approach it, because when you think about where this whole notion comes from, I sat and I thought, well, why is it you're limited to the record? The Court – I would ask that the Court look at Taft and then look at where Taft got to where, you know, its ultimate decision. Taft cited to Jones, which cited to Hicks, which And those trust cases in the District of Columbia said that where there's a factual dispute, you're entitled to have the trustee make the call in the first instance. However, where there's no factual dispute, it doesn't offend anyone if the district court makes the – or if the court makes the call in the first instance, because there's no factual dispute. That's what we have here. We don't have a factual dispute. If there really is none, it would be creating a basis for remand that has not previously existed either in this circuit or any other circuit because you're remanding not for planned interpretation, not for a factual dispute present in the record. You're remanding for a completely different proceeding on a different issue. You know, you're giving them a second bite at the apple. This is what claimants have already been prohibited from doing all over the country in every circuit. And I guess, you know, a way to illustrate that would be if a claimant came into this court and said I claimed disability because of a back injury, and then the claimant recognizes I'm going to lose on that issue, the claimant would withdraw the issue and say I want to claim it's a neck injury that disables me, not a back injury. Well, if that evidence is in the record, number one, it wasn't raised, so. Even if that position had been taken with reference to an incorrect plan, you would still then say they don't get to go back and make their pitch under the correct plan. They're just stuck. Well, you know, Your Honor, this incorrect plan, again, they're trying to pull themselves under sapling. Well, no, but I mean, in the hypo that you just gave, are you saying that then the claimant made its pitch based upon a totally incorrect plan? I don't quite understand the question, because when a claimant tries to switch the grounds, the incorrect plan really doesn't come into play. I mean, if the claimant is arguing it's an incorrect plan, that's a completely different matter. But clearly, you can't. You chose the hypo. I didn't. So, I mean, I'm just trying to see what you're really saying. You're saying that it doesn't make the slightest bit of difference that there was an abuse of discretion on the interpreting the correct plan document, basically. Well, I'm saying that the parties are limited to the record. And if you let them go outside that record, even on a hypothetical basis, and that is that there must be another issue out there, where do you limit that? Well, SAFL draws a distinction between decisions about eligibility and decisions on the merits. And here there was a decision on eligibility. From my perspective, the two merge. I would just direct you to Hensley. Okay. Hensley is a case that both parties cited. And Hensley clearly states that a decision on eligibility is a decision on the merits. And the way Hensley distinguished Williamson, the case that was being argued by the other side in Hensley, was he said in Williamson the plan had denied the requirement of the policy. That's a decision that's not on the merits. That's a decision on a cooperation clause. And Hensley clearly stated that here, meaning in Hensley, the plan made the decision on the merits. And Hensley was an eligibility case just as really Viscano was, because in Hensley they were arguing that those people were employees. How did this non-record evidence come to be before the district court? It was simply submitted attached to a motion for summary judgment by the defense. I find it hard, and I guess I should address this to the insurance company, to believe that this non-record evidence didn't influence the district court's decision. Your Honor, I think it's the elephant in the room. I think it's influencing. It's hard not to be influenced by that, but the court has to set it aside. Knowing about it, it does raise the sense of an injustice if, in fact, there is this exclusion to the policy that because of the – this is the insurance company's own fault. I would like to conclude without interrupting you, Your Honor. We'll give you an extra amount of time to answer my question. So it's their own fault for using the wrong policy in the first place that got them here. But it does seem that if – and that's why I think it was hard for the district court – that if the intoxication exclusion is applicable, then your client really wouldn't be prejudiced by letting the insurance company determine. Well, it's like saying in Sandoval v. Aetna, because that claimant was actually disabled. Aetna wouldn't be prejudiced by paying disability benefits. But the courts have never stopped and really looked at fairness. And I don't mean that in a disrespectful way. It's just not something you look at when you're limited to the record. It's not – the court then really becomes a part of the process, which it shouldn't be. And secondly, Your Honor – and just briefly, I want to close and try to save two years of rebuttal – you know, the court's assuming that this case is going to go back down and be denied on that basis. We're going to litigate that basis for the next two years if it goes back down. Because there are issues outside the record and really that aren't germane to why we're here. We're not assuming that. Well, no. What I'm saying is that this will cause – this is exactly what the problem is with this approach, is that it's exactly contrary to what ERISA provides, which is a streamlined process. And sending it back down now for a few more years of litigation on that exclusion is not a streamlined process. Well, then if you went on that one, they might find another rationale for denying. That's the problem. Thank you. Okay. Thank you, Mr. Arnold. Mr. Griffin. I have a preliminary question. Was there any conflict of interest argument raised in this case? No, ma'am. The parties agreed that the standard of review is an abuse of discretion. All right. Are you aware that our court has taken en banc for en banc review, a case precisely on that point? What is the standard of review? I'm aware of numerous cases. There's one. But I'm not aware of the one. It was heard, I think, last March and is pending review. Right. In this case, Your Honor, the standard of review was never a question or an issue. The parties agreed that the standard of review was for abuse of discretion and proceeded in that manner. And if there were to be a change in the law based on an inherent conflict of interest, I'm just wondering if we should defer this case in any, if it would make any difference, if the standard of review makes any difference in this case. Well, the standard of review can't make any difference since you concede that you goofed on the plan, whether it was abuse of discretion or de novo, right? On that issue, I believe you're correct. Okay. Well, may it please the Court, I'm Brendan Griffin. I represent Aetna. Aetna is arguing for this Court first to not accept jurisdiction of this case because we're dealing with a remand order. And the general rule with a remand order is that it's not a final judgment and this Court doesn't have jurisdiction unless the Rendleman factors are met to meet that exception. And unless the Court has any questions about the jurisdictional argument, I'll rest on the briefs except to point out that part of the policy behind the final judgment rule is that we have, by the time the case reaches the three of you, all the issues have been addressed, it's been percolated, and this Court can handle it in one forum. And you've already heard the Fisher's counsel say we're going to litigate, we have a number of other issues to litigate, this case is going to go on forever. And that's exactly why it's not timely for this Court to be hearing this case, because there are other issues that could potentially be addressed and it should all come up in one action. But we wouldn't have that if the district court hadn't taken, hadn't acknowledged the existence of these other issues that were not in the administrative record and just had decided, nope, benefits are due under the correct policy, which he would have had to decide if there was nothing beyond, if he had not taken into consideration things outside the record. That is true to a certain extent. The district court judge, magistrate, and then the judge acknowledged the existence of an issue, and I think that's what happened here. And the reason that's important is because when I was arguing to the magistrate judge, I said, Judge, we're not arguing over some theoretical potential issue here. There's something real that needs to be litigated below. And that's what you're not allowed to do. You're supposed to stick to the record and not go beyond. Now, if the insurance company did have that basis for denying coverage on the merits, it should have either brought it in as part of the record or not mentioned it at all. I don't think that's the law, Your Honor. Oh, yes, it is. The judge is not supposed to consider things beyond the record. Well, the district court judge, you're correct, but I don't think it's the law that I can't or that it's not proper for the case to be remanded back. I'm not saying that. I'm just saying it wasn't proper. This case is only being remanded back because you improperly put before the district court judge non-record evidence. I don't think so, Your Honor, because I still would have argued to the court. All Aetna has decided is eligibility. This case was filed. The claim was filed. Three weeks later, based on representations from the employer that the employee wasn't eligible for the policy, Aetna denied the claim. So are you arguing for a piecemeal rule such that, okay, you decide eligibility, deny coverage. Remand, you decide, well, intoxication exclusion applies, deny coverage. Then there's something else. Remand, well, he didn't pay his premiums on time. Deny coverage. And wouldn't that be judicially inefficient? I don't think so, Your Honor, because in the vast majority of cases, let's take a step back. The claims process here, you have a claims administrator who has a discretion to adjudicate claims in a way that is economical and efficient. A claim comes in. Well, that's why I brought up the standard of review, because if this goes back, that will be part of what's going on, what will be applicable. Even if the standard of review is de novo, I think the law under ERISA, the Nord case that came down, talks about how it's important to give plan administrators flexibility in how they administer their plans. And in this instance, you had a plan administrator who, on its face, a claim comes in. On its face, the employer is telling the plan administrator that we know this claim is going to be denied. He's not eligible. Granted, they're using the wrong policy, but that's how the claim comes in. Three weeks later, it's denied. And Aetna has no further duty to investigate before denying? Not on that basis. I don't think so, because if you look at it, under ERISA, you have 90 days to assess a claim and make a decision. What the plaintiff is arguing is that Aetna has to go through every potential issue, assume every hurdle has been met, and run the claimant through potentially unnecessary hurdles. Give me your medical records. Answer questions. If this was a disability case, go to a Miami and do all these things. First of all, the insurance company has 90 days to do that. Well, in this case, you wouldn't have had to do it, right? No. In this case, we wouldn't have had to do it. Do all those hypothetical things. Well, they would have had to investigate further. How much further? What they would have done? I'm not quite sure if Arizona law is the same, but under California law, you would have had to. I'm not following you. The insurance company has a duty to investigate. Sure. And we're talking about ERISA federal law. There still is a duty to investigate. And Aetna did that vis-à-vis the eligibility provision. And I've cited the court cases where it says it's reasonable for a plan administrator to stop at the eligibility decision if the plan doesn't jump over that hurdle. And I'd like to give the court an example. Whereas if we're at the district court level, trial court level, and the trial court says statute of limitations has not been met early on in the stage, dismisses the case, goes up on appeal. On appeal, the court says statute of limitations was wrong. And then the plaintiff gets up and says, okay, you have to decide the rest of this case based on the record at that point. I put in my allegations. I put in my evidence. I win. That wouldn't be fair. That's not how this works. The case has to go back to the district court. We're equating eligibility with preliminary determinations about jurisdiction, but how do you respond to your opponent's comment that the Hensley case says there is no difference between eligibility and the merits? I think — I don't think Hensley says that, first of all. Hensley dealt with the jurisdictional issue and whether or not there was jurisdiction from a remand order. That's what the Hensley case dealt with. And there, neither party argued against jurisdiction. There, it was a class action. This was a — this was not a class action. And there, the district court actually decided the eligibility issue wrong and remanded for the plan administrator to apply a wrong standard. And the court said, that's appealable. We're going to address that. And it actually decided an issue. In this case, eligibility — the district court didn't decide eligibility. Shortly after we got the case, realized that there was a mistake made, Aetna tried to do the right thing, did the right thing, said we made a mistake, didn't litigate the eligibility issue on the wrong policy. And if you think about what the plaintiff is arguing, if he's saying, look, you're stuck with the administrative record, then what he's saying is Aetna can't step up and do the right thing. We have to actually proceed on this case on the wrong policy, which means we should have argued the eligibility issue on the wrong policy, and we would be doing that right now. Because that's — that was what was in the administrative record, the wrong policy, the wrong eligibility provision. And, in fact, when the parties exchanged draft Rule 16 initial joint reports, that was how the issue was framed. Was the eligibility issue decided right? Was the date of employment that the — that the employer submitted the right date? But Aetna tried to do the right thing and said, hey, wait a minute, we used the wrong policy. Here's your undisputed benefits that we would have owed you if we used the right policy. We offered to pay attorneys' fees. We paid interest. And we said, let's remand this back and get it right the first time. And so Aetna respectfully requests this Court to not accept jurisdiction of this remand order. And if the Court decides to accept jurisdiction, to affirm the remand so that we can proceed on the correct policy. Let me ask one question. Did you say that Aetna is going to pay the attorneys' fees arising out of the mistake that Aetna made? What we did, Your Honor, is when Aetna realized it made a mistake, we immediately said, here are the undisputed benefits. Counsel and I worked out the interest issue. And then there was an issue of attorneys' fees. And Aetna offered to pay attorneys' fees, but when the plaintiffs decided not to agree to remand, we knew that there would be an attorneys' fees issue at the end. And so we decided to hold off on resolving attorneys' fees. We went in front of the district court on attorneys' fees. And in that process, Aetna said, up until the point where we requested remand, we will we agreed that the plaintiffs are entitled to their attorneys' fees. But from that point forward, we think Aetna is entitled to their attorneys' fees. And the court said it's a wash and didn't award anybody attorneys' fees. Thank you. Thank you very much. All right. Mr. Arnold. I have very little time left. Just briefly, Your Honor, Williamson at page 993, I think, is where they said that the eligible determination was a determination on the merits. Secondly, I don't think the Abati case will have any effect on this case. That just gets you heightened scrutiny. We want to limit this to the administrative record. That's the issue here. You know, Aetna keeps saying it used the wrong policy. The evidence in the administrative record is that that claim representative had both policies. She said, I gave policy copies to the other claims person. They didn't use the wrong policy. They simply chose the more advantageous eligibility provision. There were two of them there. They picked the one they could deny the claim on. If they hadn't conceded it, the court would have done it for them, certainly under the holding in Banuelos now. But even back then, the court wouldn't have had any difficulty finding eligibility against Aetna. So Aetna didn't act charitably here. They are now acting tactically by withdrawing a losing argument, which is what they did down at Robinson and the Fifth Circuit, which is what all insurance companies do when they realize they can't sustain their position. Ultimately, I think you have to distinguish Shadler, Sathel, and Viscano on the grounds that they weren't sent back for a different issue. They were all sent back on the same issue on the same record. There's no authority that permits what Aetna is requesting here, because ultimately what we're talking about is deference. And I would just ask that the court not show deference to actions not taken. And, you know, we cited Booten and Shakur, and Aetna has never distinguished them. They say you don't remand to a plan administrator who doesn't perform a factual investigation and who doesn't put the reason in the record. So thank you. Thank you, Your Honor. Thank you, Mr. Arnold. The matter, thank you, counsel. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Alsup